I will start with the first case on our calendar, which is V&A Collections v. Guzzini Properties, Council. Good morning, Your Honors. Judd Grossman on behalf of Plaintiff Appellant V&A Collection. This lawsuit and the New York State Court action that Guzzini filed both arise out of competing claims to artworks that Guzzini purports to have purchased in a single transaction for a single lump-sum price documented by a single contract. By affirmatively invoking the jurisdiction of a New York court as a plaintiff to adjudicate its property rights under that contract, Guzzini thereby consented to have other claims arising out of that same agreement also adjudicated in New York. Stated differently, where Guzzini elected to avail itself of the benefits of the New same transaction or occurrence, and this court has held that the transaction or occurrence standard should be construed liberally, whether that be under Rule 13 involving compulsory counterclaims. Have we accepted the implied consent doctrine? I guess the leading case is the First Circuit case. Have we adopted that in this court? This court, I don't believe, has had the opportunity to rule on it, Judge Chin, so it has not adopted it, but the overwhelming majority of courts have adopted it. Why should we adopt it? Because it's in line with the liberal transaction or occurrence standard that this court has adopted in other contexts, and as it relates to the personal jurisdiction. Why does it apply here, though, where the parties are different? Sure. So, because when we talk about personal jurisdiction, the questions that really matter, and Interpol decision discusses, involve the defendant's liberty interests, fairness, reasonableness, and when we're talking about claims and defenses arising out of the same transaction, the identity of the parties, just like in the Hangeron decision, is really immaterial. Is it the same transaction? Well, two answers to that. The short answer is yes, because Guzzini's claims arise out of the contract, just as its defenses in this case do. They are identical. The claims and defenses, they're mirror images. The state court action is an in-rem action brought because the artwork was located in New York, so it's an action to quiet title. Doesn't that make it different from this case, where the artwork is in Switzerland? Well, it's different. It's a different piece of art, first of all, and this piece of art is not in New York, but in Switzerland. Two answers to that, Your Honor. First, I think it's a difference, but without a distinction in this context, and the Neurofem decision, which we cite, which involved different patents, illustrates quite clearly why it is so different, where there is such a logical relationship to the underlying transaction. Well, you said the underlying transaction, but what we have here is V&A making a purchase in 2013 from Modern Collections, and then Guzzini having an arrangement with IPL in 2017. I mean, it's true that it's this incarcerated individual, Inigo Philbrick, who's involved in both, but why does that make it the same transaction for these purposes sufficient to imply consent? Because the transaction that Guzzini is relying on, affirmatively, as a plaintiff in the New York action, is its Guzzini contract. It is seeking to adjudicate its rights under that contract. It's asking court, and as we sit here, they're briefing this issue in the state court, whether that contract should be construed as a loan or as a purchase. So, counsel, Guzzini makes much of the fact that the state proceeding was in REM. What is the significance of that? I'd say none, Your Honor. The answer is twofold. They proceeded in REM by choice as a strategic decision, because that's where they had the work located. To be very clear, in that case, there are other claims, including by Guzzini, being asserted subject to the court's in personam jurisdiction. I think Guzzini implicitly concedes, at the very least, that the location of the work should not control, where in this case, they urge that it be proceeding in London, even though the work is located in Switzerland. So, the in REM posture of the case, Judge Pooler, really is insignificant. What matters is that their claims in that defense, in that case, and the defenses here, are literally identical. Identical to the point that they don't dispute our point on page 21, footnote 4, that the decision there, in that case, would be binding on Guzzini in this case. Not only is there an overlap of discovery, but there's an overlap in these identical legal issues. How can the issues be identical if the parties are different? I mean, V&A is not a part of the state court action. I mean, V&A tried to get into the state court action, but its motion to intervene was denied. Sure, and to be clear, and this is in the record, Joint Dependents 133, Justice Cohen marked those cases related, and required us to mark them related, understanding the logical connection between the two. But I'll make a point that illustrates how it could be identical. IPL and Filbreck were named by Guzzini as interested parties in the state court action, and indeed, one of the intervening parties named them as an intervening defendant. So IPL is in that case. It's defaulted, to be sure. Mr. Filbreck's in prison. But in that case, there can be no question that IPL could have asserted, as counterclaims or affirmative claims, claims under that contract relating to this very work. And in this case, we could have, but for practical considerations, didn't also name IPL. So there would have been an overlap in parties. What matters is the logical connection between the parties and the claim. In our transactions all the time, identities are concealed. You're not sure who the principal is, often, especially in a case like this, where there's been a theft and you have the thief purporting to sell multiple interests at the same time to different people. So there's no surprise for purposes of fairness, for purposes of reasonableness, under the personal jurisdiction analysis that really come into play. Your argument, finally, counsel, your argument is that all this was in the same agreement. And it's not identical parties. The agreement forms the nucleus of facts. Isn't that your argument? That's exactly right. And that's the claim Guzzini is making in the state court action. And it is their merits defense in this action that they're identical. Very briefly, your honors, the two remaining points that Guzzini raises, as an initial matter, we don't believe the court should reach the issues that the court didn't decide. But in any case, the arguments are meritless very quickly on form not convenes, just like in the Hengren decision, where Guzzini demonstrated its ability and did its willingness to litigate in a New York court, its claims of inconvenience and burden ring hollow. As regards to the conversion claim that we pleaded below, I think our reply papers put to rest their objections. But to be sure, New York law is clear that there may be a tendency in common as it relates to personal property, property, not just real property, thereby giving rise to a conversion claim. Thank you. Thank you, counsel. We'll hear from opposing counsel. Good morning, your honors. May it please the court. My name is Nina Edelman, and I represent Guzzini Properties Limited, the defendant appellee in this case. We respectfully request that this court affirm Judge Fela's well-reasoned, well-researched opinion and order of March 16, 2021, ruling that Guzzini did not consent to personal jurisdiction in this case by filing the prior state court action concerning the Stingle Picasso. Was it trying to take advantage of the New York forum when it brought that action? Was it trying to avail itself in the language of the statute of the New York forum? Yes, your honor. When Guzzini learned of Inigo Philbrick's frauds and scandals, the Stingle Picasso painting had been consigned for auction in New York. The auction was completed, and then Christie's informed Guzzini for the first time that there were multiple competing claimants to the work. So when Guzzini filed that state court in rem action, we didn't even know which claimants would come to the court to make ownership claims. That's why we filed it in rem. Ultimately, weren't you relying on the June 2017 agreement that included this VA's painting and other paintings? I look at it this way. My opposing counsel has very cleverly tried to place Guzzini's contract as the center of both entire litigations, but it's not. In the Stingle Picasso case, there are three competing claimants. Each of them have contracts under which they claim to have gained ownership to the Stingle Picasso painting. In this case with V&A, V&A has its 2013 contracts with IPL, Guzzini has its 2017 contracts, and as Judge Vaila's opinion ruled, the question here for conversion is who had a superior possessory right to the Wade-Guyton painting in 2019? And if we think of consent jurisdiction as sort of a Venn diagram of two cases and how closely they overlap, courts have found in the First Circuit only, not in the Second Circuit, that there has been a consent or a waiver when the circles of the Venn diagram nearly or almost nearly completely overlap. Here, there's only one document, one contract in common between the two cases. But it's the basis for the lawsuit, that one document. It's the basis for Guzzini's claims of ownership to the Stingle Picasso and the Wade-Guyton. Don't you present that document to the New York State Court? Because it's the basis of the lawsuit. We present that one document, but what V&A is asking for is an expansion of personal jurisdiction such that any two cases with one overlapping contract, even if it's a highly relevant document, that that one overlapping contract means that the cases arise from the same nucleus of operative fact. We would posit that it's one atom within the cell. It's not the nucleus of operative facts. V&A bought a 50% stake in the Wade-Guyton work in 2013. Did that give rise to a superior possessory right to the work six years later? Those issues have nothing to do with the state court's Stingle Picasso action. And that's why when V&A tried to intervene in that action, Judge Cohen said, no, this is a different artwork. You have to file a separate action. And Judge Farrell, looking at this case, also said, no, these do not meet the test of arising from the same transaction or occurrence under Second Circuit law. And I would say that the Second Circuit has spoken to this issue. There's the footnote in the Klinghoffer case saying that consent, saying that filing an action in New York does not provide consent or give a waiver for an objection to personal jurisdiction in a subsequent case. And there's also the Gulf insurance case mentioned in Judge Vaila's opinion, which was affirmed by this court in 2008. She did not note that in the opinion. But that's 273. Oh, sorry. Go ahead. Give the site. 273 Federal Appendix 90. But won't the state court's resolution of the competing claims with regard to the painting issue in that proceeding, won't that bear and have a preclusive effect potentially on V&A's own rights? These all derive from a potential fraud that was perpetrated by the 2017 agreement. And the resolution of that case seems to affect V&A's rights. Why shouldn't it be able to participate? And therefore, since you look to the New York courts to sort out those rights, to require that you adjudicate the same related issue at the same time. We're asking for the court in the Stengel-Picasso case to determine who is the owner of that painting. It's possible that a ruling in that case could have some persuasive effect in a subsequent case. But it's also possible it might not. What one of the claimants in that other case is currently arguing is that regardless of what Guzzini's 2017 contract said, by that time, Inigo Philbrook had already sold all of his rights in the Stengel-Picasso works to two other parties. So the 2017 contract with Guzzini as to the Stengel-Picasso could become irrelevant in that case, whereas it's highly relevant in this case concerning the Guyton and a 2019 claim of conversion by Guzzini. So the case is, again, do they have one contract, one element in common? Yes. But if we look at the Second Circuit cases, the Gulf insurance case, the China national case, these are cases where the court ruled that insurance claims that were filed as separate actions did not arise from the same transaction or occurrence because they related to the insurance policy. Of course, the underlying claim for damages is relevant in an insurance coverage dispute. And yet the courts of the Second Circuit have said that is not close enough to say that it arises from the same transaction or occurrence. And that is not close enough to confer personal jurisdiction. Let me ask you a question about your forum non-convenience argument if we were to get there. You say that all the witnesses, everything that happened related to the relevant transaction are in London. But aren't those same individuals and documents and so on relevant to your claim here in the New York court? What is not available here? Some yes, some no. It depends. If we look at V&A, it's two proprietors. One lives in the UK. One is in New York. There's also the question of in Cusini's 2017 contract under which it acquired the works, it had an exclusive jurisdiction clause for the UK and also a choice of law clause for English law. Again, Cusini brought the Stengel Picasso action in New York because the painting was located here at Christie's and we did not even know who would come to court to claim ownership. We had just learned of the fraud. So yes, Cusini did open itself up to counterclaims in that action that it has not objected to concerning ownership of the Stengel Picasso. But it did not open itself up to claims concerning an unrelated painting in a transaction. I'm asking about forum non-convenience. You said that the witnesses are all in London and elsewhere, but it seems to me that witnesses are likely to be involved in the New York action as well. So I've had difficulty understanding your argument. There's currently summary judgment paintings in the Stengel Picasso case. Summary judgment motions documents filed in the Stengel Picasso case before the completion of discovery, before deposition. So it's not even clear that the witnesses in that case are ever going to need to come to New York. And they are all located overseas on the Cusini side. But if there is a trial, I mean, you were arguing that the witnesses are located elsewhere, but it's the same witnesses who need to appear in New York, isn't it? There's some overlap. Again, not complete. Counsel, you say that the New York state action was about a Picasso, but it was based on the Yes, but again, we would say that in that case, there are three competing claimants. Each has a relevant transaction. Again, my opposing counsel has very cleverly placed the Cusini contract at the center of everything. But there are three relevant transactions in that case. And there are two relevant transactions in this case, just because there's one that overlaps does not make them arise from the same single transaction or occurrence. That's far afield of what the Second Circuit case law has said is not sufficient to meet the same transaction or occurrence standard. If you if you had brought this as a breach of contract action, do you agree that that would have been you wouldn't have the protection of the in rem and that would be sufficient to combine the actions and to amount to consent to jurisdiction? We do not believe so, Your Honor, because again, that case concerns determining the single Picasso painting and Cusini is willing to be a defendant in any claims brought against it concerning ownership rights as to the single Picasso. But it's a not knowingly or intelligently waive any objection to personal jurisdiction in a case involving a different painting that has never touched New York soil. No part of Cusini's transaction with IPL in any way connected to New York. There's no that's why there's no argument here for long arm jurisdiction or specific jurisdiction because it cannot meet that test. OK. Thank you. Thank you very much, Your Honors. Mr. Grossman, you reserve two minutes for rebuttal. Oh, you're on mute. I mean, thank you, Your Honors. Judge Chen, you had asked at the outset whether this court has ever endorsed the interval approach. And my friend on the other side points to footnote five in the Klinghoffer decision. Respectfully, it's undisputed that the two lawsuits there were, quote, unquote, unrelated. And the footnote five makes that clear. But I should also point out that the other side does not contest that the interval formulation should apply here. And this is at page 10 of their papers. They say the principle is not disputed that where the two actions involve the same core nucleus of operative facts, the filing of the first action may be deemed to constitute implicit consent. What we're talking about is whether this court's transaction or a current standard, which is settled in the Kibiri case from 1999, which we cite in our papers and beyond, that that standard is flexible. Quote, the circuit generally has taken a broad view, not requiring an absolute identity of factual backgrounds, but only a logical relationship between them. We don't have an absolute identity here because the parties, there's not a complete overlap of parties. Let me interrupt for just a second. The Supreme Court in recent years, you know, in Daimler and other cases, has reflected a retrenchment in its view of exercising jurisdiction, federal jurisdiction, over corporate entities. And I'm a little concerned that what you're proposing would require us to expand our view of jurisdiction, federal jurisdiction, and go run counter to that trend. What can you tell me to allay those concerns? Your Honor, we're not endorsing an expansion of the Interpol formulation at all, or this court's well-settled transaction or current standard. As it relates to consent jurisdiction, that analysis is entirely in accord with this court's precedent, that by invoking a newer court's jurisdiction, Guzzini has subjected itself to jurisdiction to resolve related, and in this case. Wouldn't you agree still that you could take a narrower or a more restricted view of what's a transaction or occurrence of the core nucleus of operative facts? And that one might say, because the parties in the two cases are not the same, because one's in REM and one is not, and because there are different paintings that issue, as well as ultimately potentially different agreements, that it's not the same core nucleus. They're similar, they're related in some ways, but it's not the same core nucleus of operative facts. As it relates to Guzzini's affirmative claim in that case and their merits defense in this case, not only is it related in a logical connection, it is identical. And they don't dispute, even during the hearing today, that the determination there as to their rights under that contract, i.e., is it a purchase agreement or is it a loan agreement, will be binding on them here. Thank you. Thank you, counsel. Thank you both. We will reserve decision.